WRIGHT, Retired Appellate Judge.
Robert Doran filed a complaint in the Montgomery County Circuit Court against John Lesenger, his former supervisor, asserting claims of assault and battery, negligence, wantonness, and willful conduct. Do-ran also filed a complaint against his former employer, Winton M. Blount, asserting that Blount ratified, or authorized, Lesenger’s willful conduct.
Blount filed a motion for a summary judgment and a supporting brief. Doran filed a brief in opposition to Blount’s motion, along with depositions and supporting affidavits. The trial court granted Blount’s motion and entered a summary judgment in his favor, which the trial court subsequently certified as a final order pursuant to Rule 54(b), Ala. R. Civ. P.
Doran appeals, contending that the trial court erred in entering a summary judgment *644 in favor of Blount. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
The record reveals the following: Blount employs Lesenger as an estate manager at Wynfield Estates, Blount’s home. Lesenger is responsible for maintaining the grounds; earing for Blount’s sheep and horses; and hiring, supervising, and firing the grounds keeping staff. In 1983 or 1984 Blount hired Doran, who worked as a groundskeeper until September 14, 1993.
Doran testified that even before the incident occurred on September 14, 1993, Lesen-ger verbally and physically abused him during his employment with Blount. Doran stated that Lesenger pinched him until he was black and blue, called him derogatory names, twice shocked him with a cattle prod, and was present when someone threw a snake on him. Doran also testified that on September 14, 1993, he had finished cutting vines on a wall in front of Blount’s house and had gotten a trash can, when Lesenger turned toward him with a weedeater, which he blocked with the trash can. He further testified that later, Lesenger, while holding the weedeater, told another employee, Tony, to hold Doran while he gave Doran a haircut and that Tony held him until Lesenger ran at him with the weedeater. Doran also stated that the weedeater string hit his legs, causing welts, and that he and Lesenger struggled with the weedeater until it broke. Les-enger apologized and offered to take Doran to a doctor, but Doran refused. Doran continued working and finished the day. Doran went to the hospital emergency room after work to see about the welts on his legs. The emergency room doctor found 11 to 15 welts on the back of Doran’s legs. Doran did not return to work at Blount’s estate. On cross-examination, Doran admitted that he never complained to Blount or to Lesenger about Lesenger’s conduct and that the welts healed without leaving any scars.
Doran’s wife testified by affidavit that she began working as a maid in Blount’s house in 1989 and that before 1989, Doran told her of numerous occasions when Lesenger pinched him and called him derogatory names. She also recounted numerous times that she told Blount how Lesenger treated her husband and that Blount repeatedly told her he would take care of it.
Lesenger admitted that he told Tony to hold Doran while he gave Doran a haircut and that he charged Doran with a weedeater. However, he testified that he did not intend to hurt Doran, that they were “horsing around,” and that when Doran grabbed the weedeater, he was hit. Lesenger testified that there was a lot of horseplay between the workers at Blount’s estate and that Doran had participated in the horseplay. He denied using a cattle prod on Doran and denied throwing a snake on Doran. Lesenger testified that the cattle prod incident involved two employees other than Doran and that he removed the batteries from the cattle prod so that it could not be used again. He admitted that he had called Doran “Dumbo,” but testified that it was a nickname that Doran liked.
Blount testified by deposition that Lesen-ger was in charge of the estate and the groundskeepers and was responsible for hiring and firing the groundskeepers. Blount also stated that he did not remember anyone complaining about Lesenger, but that he did not know if anyone had complained to his wife. Blount testified that he spends 80% of his time away from Montgomery and that his non-domestic employees are to bring any complaints to Lesenger, who is to handle the situation. Blount also testified that he heard there was a scuffle between Lesenger and Doran and that as a result of the scuffle, Doran left his employ. Blount further stated that Lesenger tried to get Doran to come back to work, but Doran refused.
A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Hand v. Greensprings Storage, 678 So.2d 1187 (Ala.Civ.App.1996). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id. Substantial evidence is “evidence of such weight and quality that fair-minded per *645 sons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our supreme court has held as follows:
“For . an employer to be held liable for the intentional torts of [his] agent, the plaintiff must offer evidence (1) that the agent’s wrongful acts were committed in the line and scope of the agent’s employment; or (2) that the acts were committed in furtherance of the business of thé employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts....”
Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885, 889 (Ala.1995).
Doran argues only that Blount had knowledge of Lesenger’s “continuing tortious conduct,” that Blount authorized, or ratified, Lesenger’s acts, and that, therefore, the trial court erred in entering a summary .judgment in favor of Blount.
The record is devoid of any evidence that Blount participated in, or authorized, Lesen-ger’s acts with the weedeater. It is undisputed that Doran never complained to Blount about Lesenger and that Doran did not return to work for Blount after the weedeater incident.
Based upon our review of the record, we conclude that Doran failed to present substantial evidence that Blount participated in, authorized, or ratified Lesenger’s acts and that, therefore, Blount was entitled to a judgment as a matter of law. The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the Judges concur.